**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| ASPEX EYEWEAR, INC. and CONTOUR OPTIK, INC., | : : : | |
| Plaintiffs/Counterdefendants, | : | Civil Action No. 10-12202-WGY |
| | : | |
| v. | : | |
| | : | |
| ALTAIR EYEWEAR, INC., | : | |
| | : | |
| | : | |
| Defendant/Counterclaimant. | : | |
| | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT OF VALIDITY**

Erik Paul Belt, BBO # 558620
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Tel: (617) 449-6500
Fax: (617) 607-9200
ebelt@mccarter.com

Tracy Zurzolo Quinn
Carl H. Pierce
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8286
TQuinn@reedsmith.com

Dated:  March 10, 2011                    Attorneys for Defendant

I.   **INTRODUCTION**

The '054 patent is invalid.  It claims magnetic clip-on eyewear with just a few basic components:  two eyeglass frames, magnets at the bridges of the frames to hold the frames together and a projection extending from the bridge of the auxiliary clip-on frame over the bridge of the primary frame.  These components all existed in the prior art.  Indeed, the Japanese Miki patent shows the very combination of those features claimed in the '054 patent.

Plaintiffs tie themselves in knots trying to distinguish the '054 patent from the prior art while still stretching the patent to cover Altair's accused products.  They meticulously parse the simplest prepositions – "in," "to" and "over" – when trying to defend the patent's validity. When arguing infringement, however, Plaintiffs abandon those careful grammatical exercises.

Prepositional wordplay aside, it is clear that magnetic clip-on eyewear with the features claimed in the '054 patent was well known in the art before the patent's application was filed, and the '054 patent is thus anticipated by and/or obvious in view of that prior art.  Plaintiffs' cross-motion to have the '054 patent declared *valid* as a matter of law is unsupported by fact or law.  The prior art compels the opposite result – summary judgment of patent invalidity.[1]

II.   **ARGUMENT**

"When I use a word, Humpty Dumpty said,
"it means just what I choose it to mean – neither more nor less."

Lewis Carroll, *Through the Looking Glass*

---

[1] Defendant Altair incorporates herein by reference the Local Rule 56.1 statement of undisputed material facts submitted in support of its motion for summary judgment of validity ("Invalidity Motion").  [D.N. 180].  Altair has moved to strike in its entirety Plaintiffs' counter-statement of facts in opposition to Altair's Invalidity Motion and in support of their cross-motion for summary judgment of validity.  [D.N. 196].   If Altair's motion to strike is granted, Plaintiffs' cross-motion for summary judgment of validity will be unsupported by any statement of material fact.  If Altair's motion is denied in whole or in part, Altair has requested leave to respond to any of Plaintiffs' factual statements that are not stricken.

Defendant Altair's construction of the '054 patent's claim language is simple and unchanging. "Secured in" always means "embedded within."   "Secured to" always means "attached to, but not embedded within." And whatever the patent's one-handed assembly language means, it, too, must always mean the same thing.[2]

Plaintiffs' handling of the '054 patent's claim language, on the other hand, presents an ever-shifting target.   To Plaintiffs, sometimes "in" means "to."   Sometimes "to" means "to or in."   And sometimes "to" means just "to," but not "in."   If the arguments regarding the meaning of these simple words seem painfully complex, the source of the confusion, at least, is clear. "In" and "to" have not suddenly become complicated words.   They do not have any special meaning in the eyewear industry, nor were they given any special definitions in the '054 patent. The only complexity lies in Plaintiffs' attempt to twist the words one way for purposes of infringement and another for purposes of validity.

Ultimately, regardless of how this Court treats the claim language of the '054 patent, the patent is invalid as a matter of law.   There simply is nothing new in using bridge-mounted magnets to connect two eyeglass frames together.   The prior art is replete with examples of magnetic clip-on eyewear with bridge-mounted magnets.   And there are only two ways to put the magnets on the frames:   They can be embedded in the frame, or attached to but not embedded in the frame.    The '054 patent adds nothing to what was already known in the art about using magnets to connect eyeglass frames, and thus is invalid as a matter of law no matter what this Court decides "in" and "to" really mean.

---

[2] Although Plaintiffs suggest that Altair's construction of "secured in" and "secured to" has shifted, it has not.   Altair's construction has remained constant, albeit expressed sometimes in slightly different words.   Simply put, "secured in" and "secured to" refer to the two ways that a magnet can be attached to an eyeglass frame.   The former refers to embedding a magnet in the frame, while the latter refers to attaching a magnet to, but not embedding it within, the frame.

### A.   Miki Invalidates The '054 Patent.

#### 1.   Under Altair's Claim Construction, The '054 Patent Is Anticipated By And Obvious In View Of Miki.

When "secured in" and "secured to" are construed as Altair contends they should be, claim 1 of the '054 patent is invalid because it is both anticipated by Miki and obvious in view of Miki and other prior art.  The '054 patent claims magnetic clip-on eyewear with the following features:  (a) a *primary* spectacle frame with a magnet "*secured in*" its bridge; and (b) an *auxiliary* spectacle frame with a magnet "*secured to*" a projection extending from the auxiliary frame bridge over the primary frame bridge.  Altair contends that a person of ordinary skill in the art reading the '054 patent would understand a magnet "secured in" an eyeglass frame to mean a magnet embedded in the frame, and a magnet "secured to" an eyeglass frame to mean a magnet attached to, but not embedded within, the frame.  [*See* D.N. 180-20 (opening report of Altair's expert) ("Sodano Inval. Report"), at 5, 12].

Miki discloses bridge-mounted magnetic clip-on eyewear.  Miki's specification discloses: (a) a primary frame with magnets "in the bridge," *i.e.*, magnets embedded in ("secured in") the primary frame bridge; and (b) an auxiliary spectacle frame with a magnet attached to (*i.e.*, "secured to") a projection extending from the auxiliary frame bridge over the primary frame bridge.  Miki thus discloses every structural feature of claim 1 of the '054 patent, thereby anticipating the claim. [*See id.* at 15-16].[3]

---

[3] Miki also discloses "hooks" to positionally stabilize the frames in addition to bridge-mounted magnets.  That additional structure does not change the fact that Miki anticipates claim 1 of the '054 patent.  Claim 1 is an "open" claim, reciting eyewear "comprising" the recited structural features.  A prior art reference that discloses all of those features will anticipate the claim even if it also discloses additional structure.  *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005) ("comprising" claim is "open-ended" and does not exclude "additional, unrecited elements").

Plaintiffs contend that the written reference in Miki's specification to magnets "in the bridge" of ("secured in") a primary frame should be disregarded and Miki's teachings limited to its illustrated working examples  (*i.e.*, its figures).  Miki's figures, standing alone, still disclose every element of the eyewear claimed in the '054 patent, with one exception:  Under Altair's claim construction, the figures show magnets attached to ("secured to"), but not embedded in ("secured in"), the primary frame bridge.  [*See* D.N. 198 (Altair reply brief in support of motion for summary judgment of invalidity) ("Altair Inval. Reply Br.") at 12].  As simply substituting magnets "embedded in" a frame for magnets "attached to" a frame was plainly known in the art, Miki's working examples at a minimum invalidate the '054 patent on grounds of obviousness.

There are just two ways to attach a magnet to an eyeglass frame – the magnet can either be embedded in ("secured in") the frame or attached to, but not embedded in ("secured to"), the frame.  Both methods of attachment are simple mechanical exercises that were well known in the field of magnetic clip-on eyewear.  [*See, e.g.,* D.N. 180-8 (Chao '207 patent), at 2:61-67 (discussing structural advantage of attaching a magnet to, but not embedding it within, a frame); D.N. 180-10 (Stemme patent) (disclosing magnets embedded in frames); D.N. 203-1 at ¶ 6 (Altair expert's rebuttal report on non-infringement, discussing awareness in the art of the aesthetic benefits of embedding a magnet in a frame)].

Persons of ordinary skill in the art not only knew the two methods of attaching magnets to eyeglass frames, they also understood the pros and cons of each method.  That is, it was known that embedding a magnet in a frame may be more aesthetically pleasing to a consumer, but it may also weaken the frame's structure.  Indeed, the '054 patent inventor himself discussed these points in the '207 patent that he expressly cited in the '054 patent as the *most relevant prior art* he knew.  [See D.N. 180-3 ('054 patent), at 1:8-9; D.N. 180-8 (Chao '207 patent), at 2:61-67

(discussing structural advantage of attaching a magnet to, but not embedding it within, a frame)].

Substituting one method of attachment for the other to address these basic design preferences would thus have been a predictable, and obvious, variation for a person of ordinary skill in the art. *See Tokai Corp. v. Easton Enters., Inc.*, Nos. 2010-1057, 2010-1116, -- F.3d --, 2011 WL 308370, at *11 (Fed. Cir. Jan. 31, 2011) (affirming summary judgment of invalidity where all components of claimed utility lighter existed in prior art utility lighters and cigarette lighters and the particular combination claimed was "nothing more than a predictable variation on the prior art") (citing *KSR Int'l Co., v. Teleflex, Inc.*, 550 U.S. 398, 417 (2007)).    At a minimum, therefore, Miki, alone or in combination with Chao '207 and/or Stemme, invalidates claim 1 of the '054 patent on obviousness grounds. *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1349 (Fed. Cir. 2001) (single prior art reference that does not disclose one of the limitations in a claim may invalidate the claim on grounds of obviousness); *see also* [D.N. 180-20] at 18-24 (Altair expert's detailed assessment of why claim 1 of the '054 patent is invalid on obviousness grounds in view of Miki in combination with other prior art)].[4]

---

[4] Plaintiffs contend that claim 1 of the '054 patent also requires that the claimed eyewear be capable of assembly with one hand.  Because Miki discloses eyewear with all the structure claimed in the '054 patent, Miki is presumed to be capable of one-handed assembly. *In re Schreiber*, 128 F.3d 1473, 1748 (Fed. Cir. 1997) (where all of the structural limitations are disclosed in a prior art reference, a functional limitation is presumed to be inherently found and the prior art reference establishes a *prima facie* case of anticipation).   Plaintiffs have done nothing to rebut that presumption.  On the contrary, the inventor of the '054 patent himself has attested to the fact that eyewear made according to the structure disclosed in Miki can be assembled with one hand.  [*See* D.N. 180-4 (Chao '811 patent), at 7:25-44;7:50-64; D.N. 180-5 (Chao '896 patent), at 7:53-67; 8:1-12]. In any event, at the hearing on the parties' cross-motions for summary judgment, Altair will provide the Court with a prototype of Miki eyewear so the Court can make that determination for itself.

### 2. Under Plaintiffs' Shifting Claim Construction, The '054 Patent Is Still Anticipated By And Obvious In View Of Miki.

If "secured in" and "secured to" are construed the way Plaintiffs contend they should be when arguing infringement, then Miki still invalidates the '054 patent on grounds of both anticipation and obviousness.

When arguing infringement, Plaintiffs contend that the plain meaning of "secured in" is "stably embedded within" and the plain meaning of "secured to" is "stably embedded within or attached to." [*E.g.,* D.N. 172 (opening brief in support of Plaintiffs' Infringement Motion), at 12.] Under this construction, a person of ordinary skill in the art knows that "secured to" means that the magnet is "stably embedded within or attached to the frame," and thus a magnet embedded in an eyeglass frame is known to be "secured to" the frame. A magnet attached to, but not embedded in, an eyeglass frame is also "secured to" the frame, such that a person of ordinary skill in the art would equally understand this magnet to be "stably embedded within or attached to the frame."  Miki thus discloses the '054 patent's recitation of a magnet "secured in" ("stably embedded within") the primary frame bridge under Plaintiffs infringement construction because (a) Miki's specification expressly discloses a magnet "in the bridge" of the primary frame, and (b) Miki's illustrated working examples show a magnet "stably embedded within or attached to" the primary frame bridge.

Plaintiffs contend that Miki does not anticipate claim 1 because Miki purportedly discloses only a magnet attached to, but not embedded within, the bridge of a primary frame, and thus does not disclose a magnet "secured in" the primary frame bridge.  To make this argument, Plaintiffs ignore the explicit disclosure in Miki's specification of magnets "in the bridge" of the primary frame.  They also are reduced to an unsupportable position regarding what it means for a magnet to be "secured in" or "secured to" an eyeglass frame.

Miki's working examples undeniably show a magnet "secured to" the primary frame bridge, no matter how that term is construed.  To argue that Miki does not anticipate the '054 patent, then, Plaintiffs must contend that "secured to" means only "attached to," and *not* "stably embedded within."  But that is a complete abandonment of Plaintiffs' infringement-oriented construction of "secured to" to mean "*stably embedded within or* attached to."  Moreover, if "secured to" is construed to mean only "attached to," and *not* "embedded within," then Altair's accused products do not infringe the '054 patent, because Altair's products have magnets *embedded within* the auxiliary frame.  As the claim must be construed the same way for purposes of both validity and infringement, this is not a viable argument.  *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001) (a patent owner "cannot have an expression be limiting in [a validity] context and non-limiting in [an infringement context]."); *see also W.L. Gore & Associates Inc. v. Garlock Inc.*, 842 F.2d 1275, 1279 (Fed. Cir. 1988) ("Having construed the claims one way for determining their validity, it is axiomatic that the claims must be construed in the same way for infringement.").

Knowing this, Plaintiffs argue instead that "secured to" is a genus representing all the ways that magnets can be attached to eyeglasses, and "attached to" and "stably embedded within" are two species within that genus.  Plaintiffs contend that Miki does not anticipate claim 1 of the '054 patent because it discloses only the "attached to" species of magnet/frame attachment, and not the "stably embedded within" species.  Plaintiffs fare no better with this argument.  Attaching a magnet to an eyeglass frame and embedding a magnet in a frame are not patentably distinct "species" of some broader magnet-attaching "genus." They are the *only two ways* to connect a magnet to a frame.  The magnet either is embedded in the frame or it is not. Both options were well known, and disclosed, in the field of magnetic clip-on eyewear before the

application for the '054 patent was filed.  Indeed, the '054 patent inventor himself described the two options in his earlier '207 patent – expressly cited in the '054 patent as the most relevant prior art to the patent.

With just two ways to attach magnets to an eyeglass frame, each the converse of the other, and both well known in the art, the simple selection of one method discloses the other, and Miki's purported selection of a magnet "attached to, but not embedded within" a frame necessarily also discloses a magnet "embedded within" the frame. Where, as here, the allegedly missing element is known, that knowledge renders the reference anticipatory.  *In re Graves*, 69 F.3d 1147, 1152 (Fed. Cir. 1995); *International Arrow, Inc. v. Spire Biomedical, Inc.*, 656 F. Supp. 2d 46, 67 (D. Mass. 2009).

There is no way for Plaintiffs to get around Miki.  Miki discloses magnetic clip-on eyewear with every structural feature claimed in the '054 patent.  It anticipates the '054 patent, and/or renders it obvious, regardless of whether it is deemed to expressly recite a magnet embedded in the bridge of a primary frame or disclose a magnet attached to, but not embedded in, that primary frame bridge.  And it anticipates the '054 patent, and/or renders it obvious, no matter how this Court construes the '054 patent's recitation of magnets "secured in" and "secured to" eyeglass frames.

### B.    Stemme Invalidates The '054 Patent.

Plaintiffs argue that Stemme does not anticipate claim 1 of the '054 patent because it purportedly does not adequately disclose one limitation of that claim – a projection from the bridge of the auxiliary frame "extending over" the bridge of the primary frame. Regardless of

whether Stemme anticipates the '054 patent, it presents compelling evidence that the patent's claimed invention would have been obvious to those of ordinary skill in the art.[5]

Stemme discloses (a) a primary eyeglass frame with a magnet embedded in its bridge, and (b) an auxiliary eyeglass frame with a magnet embedded in a projection from its bridge. [cite]  Stemme thus discloses every structural limitation of claim 1 of the '054 patent – except, according to Plaintiffs, a projection that extends from the bridge of the auxiliary frame over the *entire top* of the bridge of the primary frame. [6]

There is nothing in the '054 patent's claims, specification or file history to support Plaintiffs' contention that "extending over" should mean "extending over the *entire top* of" (or even just "over the *top* of").  Plaintiffs have simply imported that new limitation into the '054 patent's claim language in hopes of distinguishing Stemme as an anticipatory reference.  To the extent the "extending over" language of claim 1 of the '054 patent requires construction at all, it

---

[5] Altair did not argue Stemme as an anticipatory reference for purposes of summary judgment. Altair understood that Plaintiffs would challenge, as a factual matter, the clarity of Stemme's disclosures regarding a projection from the auxiliary frame's bridge.  Altair accordingly argued Stemme as a highly material prior art reference in moving for summary judgment of invalidity on obviousness grounds, and reserved the right to argue Stemme as an anticipatory reference if the matter should proceed to trial, where a factfinder can address any factual disputes regarding the nature of the projection disclosed in Stemme.  *See* Altair Inval. Reply Br. [D.N. 198] at 12-13, n5].

[6] As Stemme's eyewear contains the same structure claimed in the '054 patent, it is presumed to be capable of one-handed assembly.  *In re Schreiber*, 128 F.3d at 1748.  [*See also* D.N. 180-10 (Stemme patent) at 1:32-54 (claimed eyewear can be assembled "promptly, quickly" and in a "simple manner"); D.N. 180-20, at 17-18 (opinion of Altair's expert that this language would inform a person of ordinary skill in the art that the eyewear can be assembled with one hand)]. Plaintiffs do not contend that a user would have any difficulty assembling Stemme's eyewear with one hand.  Nor could they.  Stemme's eyewear has no "hooks" or other attachment mechanisms of the sort that Plaintiffs now contend, notwithstanding the '054 patent inventor's statements to the contrary, might interfere with one-handed assembly.  [*See* D.N. 174-3 Ex. 7 (June 1, 2010 Office Action Response), at 46; *but see* D.N. 180-4 ('811 patent), at 7:25-44;7:50-64; D.N. 180-5 ('896 patent), at 7:53-67; 8:1-12].

should be construed consistent with its plain and ordinary meaning to mean a projection that extends over some portion of the primary frame bridge.[7]

Regardless of whether Stemme anticipates the '054 patent, there can be no real question that it invalidates the patent on grounds of obviousness. If the only difference between Stemme and the eyewear claimed in the '054 patent is a projection extending from the bridge of the auxiliary frame over the top of the primary frame bridge, such projections were well known in the art – *see, e.g.,* Miki – and the modification of the projection of Stemme's eyewear would have been a mere predictable variation. *Tokai,* 2011 WL 308370, at *11.

**C.    The Patent Examiner's Decision To Reissue The Claims Of The '054 Patent Is Entitled To Little Or No Deference.**

Finally, Plaintiffs would have this Court give far more weight than is warranted to the Patent Examiner's decision to reissue the claims of the '054 patent without amendment. Before reversing course, the Examiner rejected the '054 patent's claims as invalid as anticipated by both Miki and Stemme and obvious in view of Miki, Stemme and other prior art. [*See* D.N. 180-25 (Office Action of March 29, 2010) at 11-32]. But then the Examiner met *ex parte* with the applicants' legal counsel. Altair does not yet know what the Examiner was told during that interview.[8]

After the *ex parte* meeting, the Examiner reversed her initial determination that Miki, Stemme and the other cited prior art invalidate the '054 patent and decided instead to allow the

---

[7] Plaintiffs contend that the '054 patent applicants disclaimed during prosecution projections that do not extend over the entire top of the primary frame's bridge. [*See* D.N. 172 (Plaintiffs' opening brief in support of their Infringement Motion, at 7-8]. The prosecution history that Plaintiffs cite does not support their argument. Indeed, in the cited portion of the prosecution history the '054 patent applicants address a prior art reference that does not disclose a projection at all. [*See* D.N. 174-4, Ex.10 (Sadler patent)].

[8] Altair has moved for leave to depose the lawyer who met with the Examiner to discover what representations were made in that *ex parte* meeting. [*See* D.N. 200].

claims to reissue without amendment.  The Examiner's notice of intent to reissue the patent is a

terse statement that offers no explanation for that reversal.   The Examiner's statement of the

substantive basis for the decision is set forth *in its entirety* below (reproduced *verbatim*, with all

grammatical and spelling errors as in the original, and all emphasis as in the original):

> The following is an examiner's statement of reasons for patentability
> and/or confirmation of the claims found patentable in this reexamination
> proceeding:
>
> The Examiner agrees with Patent Owner's statement presented on
> 6/1/2010 regarding claims 1-4.  It is agreed that Miki, Stemme, Chen, Zen and
> Chao '207 fail to disclose or suggest the combination limitations:
>
> 1/  **a first connector member secured in said middle bridge portion of
> said primary spectacle frame,**
>
> 2/  **an auxiliary spectacle flame for supporting auxiliary lenses therein,
> said auxiliary spectacle frame including a middle bridge portion having a
> projection extended therefrom for extending over and for engaging with said
> middle bridge portion of said primary spectacle flame,**
>
> 3/  **a second connector member secured to said projection of said
> auxiliary spectacle frame for engaging with said first connector member of
> said primary spectacle frame,** and
>
> 4/  **magnetic means operatively associated with the first and second
> connector members whereby they are connectable to each other magnetically
> for allowing said auxiliary spectacle frame to be attached to said primary
> spectacle flame with only one hand by a user**" as required in claim 2.
>
> Claims 3-4 are considered to be patentable due to their dependency on
> claim 2.
>
> While Miki, Stemme, Chen, Zen, Chao do indeed teach eyeglass devices
> include a primary and an auxiliary spectacle frames for supporting lenses.
> However, the above specific combination structures are not seen in these
> references, nor are there any suggestions of doing so.  For example, Stemme does
> not specifically disclose ***"said auxiliary spectacle frame including a middle
> bridge portion having a projection extended therefrom for extending over and
> for engaging with said middle bridge portion of said primary spectacle frame"***;
> or since Miki's auxiliary spectacle frame is mounted on Miki's primary spectacle
> frame using three attachment points (U-shape hook 13 and a pair of hooks 12 on
> the top rim edges) to provide the stable attachment, Miki is not seen easily use
> with only one hand to steadily attach the auxiliary spectacle frame to the primary
> spectacle frame as required with the structure above of claims 1 and 2.  Thus,
> independent claims 1-2 distinguish over these references and are deemed
> patentable.

[*See* D.N. 180-18 (notice of intent to reissue) at 9-11].

Nothing in the Examiner's perfunctory statement suggests any meaningful understanding, or analysis, of the prior art. The Examiner does not state her construction of the '054 patent's "secured in," "secured to" and "extending over" claim language. She does not explain why Miki and Stemme do not invalidate the '054 patent's claims on obviousness grounds even assuming *arguendo* that they did not anticipate them. Her unquestioning acceptance of the '054 patent applicants' representation that Miki's eyewear cannot be assembled with one hand due to the presence of hooks in addition to magnets was made without any consideration of the fact that the inventor of the '054 patent himself expressly confirmed that magnetic clip-on eyewear with multiple points of contact in addition to magnets *can* be easily assembled with one hand. [9]  [D.N. 180-4 ('811 patent) 7:25-44;7:50-64; D.N. 180-5 ('896 patent) 7:53-67; 8:1-12].

At the hearing on the parties' cross-motions for summary judgment, Altair will provide this Court with a sample of eyewear made according to Miki's specifications, and the Court can assess for itself the ease with which that eyewear can be assembled with one hand. The Examiner's cursory statement of the basis for allowing the '054 patent's claims to reissue is no

---

[9] Plaintiffs contend that the Examiner "considered" the teachings of Chao's '811 and '896 patents during reexamination because the '054 patent applicants identified those references in an Information Disclosure Statement ("IDS"). The IDS in question lists more than 150 references, many of which are not even prior art. [See D.N. 206-9 (Information Disclosure Statement of June 1, 2010)]. The '054 applicants did nothing to call to the Examiner's attention, from the avalanche of references listed on the IDS, the highly material assertions that the '054 patent's inventor made in his '811 and '896 patents regarding one-handed assembly of magnetic clip-on eyewear, The applicants' failure to inform the Examiner that, contemporaneously with his prosecution of the application underlying the '054 patent, the '054 patent's inventor made statements to the PTO flatly contradicting the arguments of their counsel in the re-examination proceeding is damning evidence of the applicants' failure to meet their duty of candor and disclosure to the PT. Indeed, courts have considered the mere act of burying the Patent Office with references to be probative of inequitable conduct. *Molins PLC v. Textron Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) (""burying" a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith.").

impediment to this Court's own, more thorough assessment of the prior art that, as Altair has demonstrated, plainly invalidates those claims.

> **D.    The Prior Art Precludes Summary Judgment Of Validity And Compels Summary Judgment Of Invalidity.**

Plaintiffs have asked this Court to grant summary judgment of the '054 patent's validity. But they have not explained how this Court can do so in light of the prior art Altair has cited. Altair has shown that magnetic clip-on eyewear with all the features claimed in the '054 patent was already well known to people of ordinary skill in the art before the application for that patent was filed.  Altair has presented detailed testimony from its expert demonstrating that there is nothing novel in the '054 patent's use of bridge-mounted magnets to attach two eyeglass frames together.[10]  The '054 patent should accordingly be declared *invalid* as a matter of law on grounds of anticipation, obviousness or both.

## III.   CONCLUSION

WHEREFORE, for all the foregoing reasons, as well as the reasons set forth in Altair's Invalidity Motion and the memoranda and statements of undisputed fact in support thereof, Altair respectfully requests that this Court enter an Order granting summary judgment of invalidity of claim 1 of the '054 patent, denying Plaintiffs' cross-motion for summary judgment of validity, dismissing Plaintiffs' claims with prejudice and awarding Altair such other and further relief, including costs and attorneys' fees to the extent permitted by law, as this Court may deem proper.

---

[10]  Plaintiffs wrongly challenged the reports of Altair's expert as hearsay.  [*See* D.N. 186 (Plaintiffs' brief opposing Altair's Invalidity Motion), at 11].  After a meet and confer between counsel, Plaintiffs have withdrawn that objection.

Respectfully submitted,


/s/ Erik Paul Belt
Erik Paul Belt, BBO # 558620
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Tel: (617) 449-6500
Fax: (617) 607-9200
ebelt@mccarter.com

Tracy Zurzolo Quinn
Carl H. Pierce
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia PA 19103
(215) 851-8286
tquinn@reedsmith.com
cpierce@reedsmith.com

Attorneys for Defendant

Dated: March 10, 2011



## CERTIFICATE OF SERVICE

I certify that, on March 10, 2011, a true copy of this document filed through the ECF
system will be sent electronically to the registered participants as identified on the Notice of
Electronic filing (NEF) and paper copies will be sent to those indicated as non-registered
participants.


/s/ Erik Paul Belt
Erik Paul Belt