UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
─────────────────────────────────
                                  )
ASPEX EYEWEAR, INC. and           )
CONTOUR OPTIK, INC.,              )
                                  )
                Plaintiffs,       )
                                  )
        v.                        )   CIVIL ACTION
                                  )   NO. 10-12202-WGY
ALTAIR EYEWEAR, INC.,             )
                                  )
                Defendant.        )
─────────────────────────────────)
```

MEMORANDUM

YOUNG, D.J.                                October 12, 2011

## I.   PRIOR PROCEEDINGS

This lengthy litigation began in 2002, when the plaintiffs,

Aspex Eyewear, Inc. and Contour Optik, Inc. (collectively

"Aspex"), filed suit under 35 U.S.C. § 271 against Altair

Eyewear, Inc. ("Altair") in the United States District Court for

the Southern District of New York for infringement of three

United States patents: Nos. 5,737,054 (filed Dec. 18, 1996) (the

"'054 patent"); 6,012,811 (filed Nov. 3, 1997) (the "'811

patent"); and 6,092,896 (filed Aug. 4, 1999) (the "'896 patent").

Pls.' First Am. Compl. 2-5, ECF No. 3.  This Court has general

federal question jurisdiction over these claims under 28 U.S.C.

§ 1331.

In a written opinion, the district court denied Altair's

motion for partial summary judgment for lack of standing and

Aspex's motion for leave to add Altair's parent corporation as a party defendant.  Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 361 F. Supp. 2d 210, 218 (S.D.N.Y. 2005).  After reviewing the briefs and conducting a Markman hearing, see Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 384-85 (1996), the district court construed the disputed claim terms.  Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 386 F. Supp. 2d 526, 533-42 (S.D.N.Y. 2005).  Based on the court's claim construction, Altair moved for summary judgment of non-infringement of all three patents, and Aspex moved for summary judgment of literal infringement of the same.  Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 485 F. Supp. 2d 310, 315 (S.D.N.Y. 2007).  The district court granted Altair's motion for summary judgment of non-infringement and denied Aspex's motion.  Id. at 327.  Aspex appealed the district court's grant of summary judgment to the United States Court of Appeals for the Federal Circuit, while Altair appealed the district court's denial of summary judgment on the standing issue.  Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 288 F. App'x 697, 700-01 (Fed. Cir. 2008). The Federal Circuit reversed the district court's construction of "frame" and thus its summary judgment of non-infringement as to the '054 patent, but affirmed the district court's summary judgment of non-infringement on the '811 and '896 patents and the

district court's denial of summary judgment on the standing issue.  Id. at 706.

In July 2010, the case was reassigned to this Court sitting by designation in the Southern District of New York, and subsequently in December 2010, the parties transferred the case by argument to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).  Order, ECF No. 160; Stipulation & Order, ECF No. 166.

 Meanwhile, Altair sought reexamination of the '054 patent by the U.S. Patent and Trademark Office (the "USPTO").  The USPTO found the original claims to be patentable and notified Aspex of its intent to issue a reexamination certificate.

The parties have proceeded with commendable promptitude since the case was transferred to this Court.  They first sought further construction of the '054 patent.  Notice Markman Hr'g, ECF No. 162.  Aspex then moved for summary judgment of literal infringement, while Altair moved for summary judgment of invalidity.  Pls.' Mot. Summ. J. Literal Infringement, ECF No. 171; Def.'s Mot. Summ. J. Invalidity, ECF No. 178.  Aspex subsequently filed a cross motion for summary judgment of validity, while Altair filed a cross motion for non-infringement. Pls.' Cross Mot. Summ. J. Validity, ECF No. 185; Def.'s Cross Mot. Summ. J. Non-Infringement, ECF No. 190.  Because the cross motions are virtual mirror images, Aspex and Altair agreed to

resolve the liability phase of this litigation as a "case

stated."[1]  The <u>Markman</u> hearing took place on March 31, 2011,

followed immediately by arguments on the "case stated."

## II.  FINDINGS OF FACT AND RULINGS OF LAW[2]

---

[1] Derived from the procedures of the courts of the
Commonwealth of Massachusetts, <u>see, e.g.</u>, <u>Parker</u> v. <u>Morrell</u>, 59
Mass. App. Dec. 34 (Mass. Dist. Ct. 1976), the "case stated"
procedure is firmly established in the jurisprudence of the First
Circuit.  <u>See, e.g.</u>, <u>Situation Mgmt. Sys., Inc.</u> v. <u>ASP Consulting
LLC</u>, 560 F.3d 53, 58 (1st Cir. 2009); <u>Continental Grain Co.</u> v.
<u>Puerto Rico Maritime Shipping Auth.</u>, 972 F.2d 426, 429 n.7 (1st
Cir. 1992); <u>Boston Five Cents Sav. Bank</u> v. <u>Secretary of Dep't of
Hous. & Urban Dev.</u>, 768 F.2d 5, 11-12 (1st Cir. 1985); <u>Bunch</u> v.
<u>W.R. Grace & Co.</u>, 532 F. Supp. 2d 283, 286-87 (D. Mass. 2008).
It is a most helpful procedural device.  <u>See</u> Randall Rader, C.J.,
Fed. Cir., Remarks at the Eastern District of Texas Judicial
Conference: The State of Patent Litigation 12-13 (Sept. 27, 2011)
(advocating "aggressive" resolution of patent cases without a
full trial), <u>available at</u> https://www.docketnavigator.com/entry/
img/The-State-of-Patent-Litigation-w-Ediscovery-Model-Order.pdf.
In this session of the Court, it works like this: whenever cross
motions for summary judgment reveal that the relevant facts
appear without significant dispute, the courtroom deputy clerk
offers the parties to treat the case as a case stated.  Should
they accept, as they did here, the Court treats the undisputed
facts as the established record and draws the reasonable
inferences therefrom without the necessity of drawing adverse
inferences against each moving party.  The facts of the case
being established, the Court affords each party thirty minutes
for final argument (not the usual ten minutes per party when
hearing argument on a motion).  In due course, the Court enters
findings and rulings as required by Federal Rule of Civil
Procedure 52(a)(1).

[2] Rule 52(a)(1) of the Federal Rules of Civil Procedure
states that the findings of fact and rulings of law shall be
stated "separately."  This aspect of the rule is frequently
honored in the breach as district courts instead opt for the
familiar narrative form of decision favored by appellate courts.
<u>See generally</u> Lawrence S. Zacharias, <u>The Narrative Impulse in
Judicial Opinions</u>, 23 Law & Literature 80 (2011).  Here, because
much of this discussion involves mixed fact-law analysis and
because the Federal Circuit itself, with its penchant for

**A.   The '054 Patent**

The '054 patent is entitled "Auxiliary Lenses for
Eyeglasses."  '054 patent 1, Def.'s Local Rule 56.1 Statement
Undisputed Material Facts Supp. Mot. Summ. J. Invalidity ("Def.'s
SOF"), Ex. 3, ECF No. 180-3.  The invention's primary objective
is "to provide auxiliary lenses which may be easily engaged on
the primary spectacle frame."  Id. at col.1 1.28-30.  The
eyeglass device is comprised first of a primary spectacle frame
"including a middle bridge portion, a first magnetic or
magnetizable member secured in the middle bridge portion of the
primary spectacle frame."  Id. at col.1 1.32-36.  It is also
comprised of an auxiliary spectacle frame "including a middle
bridge portion having a projection extended therefrom for
extending over and for engaging with the middle bridge portion of
the primary spectacle frame."  Id. at col.1 1.38-41.  The second
magnetic or magnetizable member is "secured to the projection of
the auxiliary spectacle frame" so that it can engage with the
first magnet or magnetized material.  Id. at col.1 1.41-44.
Finally, the invention allows the auxiliary frame to be attached
to the primary frame with only one hand.  Id. at col.1 1.45-46.

---

defining factual determinations as matters of law when manifestly
they are not, see Amgen, Inc. v. Hoechst Marion Roussel, Inc.,
287 F. Supp. 2d 126, 135-36 (D. Mass. 2003), aff'd in part, rev'd
in part, 457 F.3d 1293 (Fed. Cir. 2006); MediaCom Corp. v. Rates
Tech., Inc., 4 F. Supp. 2d 17, 20 (D. Mass. 1998), seems
hopelessly to have conflated the two, such an approach is
warranted.

Only Claim 1 of the '054 patent is at issue in this litigation.  It reads:

> An eyeglass device comprising:
> a primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including a middle bridge portion,
> a first magnetic member secured in said middle bridge portion of said primary spectacle frame,
> an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary spectacle frame including a middle bridge portion having a projection extended therefrom for extending over and for engaging with said middle bridge portion of said primary spectacle frame, and
> a second magnetic member secured to said projection of said auxiliary spectacle frame for engaging with said first magnetic member of said primary spectacle frame and for allowing said auxiliary spectacle frame to be attached to said primary spectacle frame with only one hand by a user.

Id. at col.2 1.64 to col.3 1.14.

## B. Claim Construction

Before this Court confronts the issues of invalidity and infringement, disputed claim terms must be construed.  See Vizio, Inc. v. International Trade Comm'n, 605 F.3d 1330, 1336 (Fed. Cir. 2010).  Claims are construed as matter of law.  Markman, 52 F.3d at 979.  Claim terms "are generally given their ordinary and customary meaning," Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)), as understood by "a person of ordinary skill in the art in question at the time of the invention," id. at 1313.  See generally Edward D. Manzo, Patent Claim Construction in the Federal Circuit (2010).

6

### 1.   Prior Claim Construction

During the March 31, 2011, <u>Markman</u> hearing, both Aspex and Altair agreed to the Court's proposed construction of the terms "secured in" as "embedded within" and "extending over" as "extending above and partially covering the middle bridge of the primary frame."  Tr. Markman Hr'g & Case Stated 6-7, ECF No. 223. The only term that this Court took under advisement is the phrase "secured to."

### 2.   Construction of "secured to"

The construction of the term "secured to" is significant because Altair's accused products have a magnet embedded in the bridge portion of the auxiliary frame, which could be found non-infringing of the '054 patent if "secured to" is construed to mean only "attached to" instead of the broader construction (that Aspex is requesting) which would encompass a magnet embedded within.

Claim 1 of the '054 patent specifies "a second magnetic member secured to said projection of said auxiliary spectacle frame for engaging with said first magnetic member . . . ."  '054 patent col.3 l.9-11.  The specification additionally states that "[t]he auxiliary spectacle frame also includes a magnetic or magnetizable connector member secured in the projection," <u>id.</u> at col.2 l.13-15, and describes the second magnet as "secured to" the projection, <u>id.</u> at col.1 l.42.

Aspex has construed the term "secured to" to mean "stably embedded within or attached to."  Pls.' Opening Mem. P. & A. Supp. Mot. Summ. J. Literal Infringement 12, ECF No. 172.  Aspex argues that the definition of "to" is broad and that therefore the definition should not be limited to situations in which one part attaches to another.  Id. at 13-14.  Figure 4 of the '054 patent shows the second magnetic member both embedded and attached to the projection of the auxiliary spectacle frame.  Id. at 14.  Aspex states that the term "secured to" is a genus term that encompasses the species term "secured in."  Id.

Altair explains that there are two ways of attaching a magnet to a spectacle frame: (1) by embedding the magnet within the frame, or (2) by attaching the magnet to the surface of the frame.  Def.'s Mem. L. Opp'n Pls.' Mot. Summ. J. Infringement & Supp. Def.'s Cross Mot. Summ. J. Non-Infringement 3, ECF No. 191. Altair contends that the term "secured to" means "attached to but not embedded within."  Id. at 2.  Altair also expounds the difference between the ordinary dictionary meanings of "in" and "to" and argues that the placement of the magnet would be different depending on which preposition is used.  Id. at 4-5.

The most interesting of Altair's arguments is that Richard Chao ("Chao"), the '054 patent inventor, specifically addressed the distinction between securing magnets "in" and "to" a frame in one of his earlier patents, U.S. Patent No. 5,568,207 (filed Nov.

8

7, 1995) (the "Chao '207 patent"), which the '054 patent cites as its closest analogous prior art.  Id. at 5.  Altair wants this Court to take into account Chao's teachings in the Chao '207 patent for the construction of the '054 patent.  Altair overlooks the fact that the '054 patent cites the Chao '207 patent only as prior art, not as its parent.  The '054 patent and the Chao '207 patent are not connected, and therefore Chao's teachings in one patent cannot help this Court construe terms in another patent.

If the meaning of a claim term is not readily apparent, the court looks to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."  Phillips, 415 F.3d at 1314 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

The word "in" indicates "inclusion, location, or position within," while the word "to" is used to express "contact or proximity."  Compare In Definition 1(a), Merriam-Webster.com, http://merriam-webster.com/dictionary/in (last visited Oct. 2, 2011), with To Definition 1(c), Merriam-Webster.com, http://merriam-webster.com/dictionary/to (last visited Oct. 2, 2011).  Broadly speaking, "to" does not exclude the word "in," as Altair wants this Court to rule.  If a magnet is embedded within,

it is also in contact with or proximate to the projection of the auxiliary frame's middle bridge.

The specification, when describing the auxiliary spectacle frame, states that it "includes a magnetic or magnetizable connector member secured in the projection." '054 patent col.2 l.13-15.  Chao used both "secured in" and "secured to" to describe how the second magnet relates to the projection.  The projection is part of the middle bridge of the auxiliary frame, thus making it important to describe the second magnetic member as it relates not only to the middle bridge but also to this projection.  After reviewing all the intrinsic evidence, this Court construes "secured to" as "embedded within and attached to" because in the '054 patent the second magnetic member is both embedded in the middle bridge member of the auxiliary frame and attached to the projection.

### C.   Patent Invalidity

The burden of establishing the invalidity of an issued patent rests on the party asserting invalidity.  35 U.S.C. § 282. The Supreme Court recently confirmed that invalidity must be proved by clear and convincing evidence.  <u>Microsoft Corp.</u> v <u>i4i Ltd. P'ship</u>, 131 S. Ct. 2238, 2242 (2011).  "When the party asserting invalidity relies on references that were considered during examination or reexamination, that party 'bears the added burden of overcoming the deference that is due to a qualified

government agency presumed to have done its job.'" <u>PharmaStem</u>
<u>Therapeutics, Inc.</u> v. <u>ViaCell, Inc.</u>, 491 F.3d 1342, 1366 (Fed.
Cir. 2007) (quoting <u>Polaroid Corp.</u> v. <u>Eastman Kodak Co.</u>, 789 F.2d
1556, 1560 (Fed. Cir. 1986)); <u>see also</u> <u>American Hoist & Derrick</u>
<u>Co.</u> v. <u>Sowa & Sons, Inc.</u>, 725 F.2d 1350, 1359 (Fed. Cir. 1984),
<u>abrogated on other grounds by</u> <u>Therasense, Inc.</u> v. <u>Becton,</u>
<u>Dickinson & Co.</u>, 2008-1511, 2008-1512, 2008-1513, 2008-1514,
2008-1595, 2011 WL 2028255, at *7-9 (Fed. Cir. May 25, 2011).

## 1.   Anticipation

A claim is anticipated only "if each and every limitation is
found either expressly or inherently in a single prior art
reference." <u>Celeritas Techs., Ltd.</u> v. <u>Rockwell Int'l Corp.</u>, 150
F.3d 1354, 1361 (Fed. Cir. 1998).  "[A]nticipation by inherent
disclosure is appropriate only when the reference discloses prior
art that must <u>necessarily</u> include the unstated
limitation . . . ." <u>King Pharms., Inc.</u> v. <u>Eon Labs, Inc.</u>, 616
F.3d 1267, 1274 (Fed. Cir. 2010) (alteration in original)
(quoting <u>Transclean Corp.</u> v. <u>Bridgewood Servs., Inc.</u>, 290 F.3d
1364, 1373 (Fed. Cir. 2002)).

"Typically, testimony concerning anticipation must be
testimony from one skilled in the art and must identify each
claim element, state the witnesses' interpretation of the claim
element, and explain in detail how each element is disclosed in
the prior art reference." <u>Schumer</u> v. <u>Laboratory Computer Sys.,</u>

<u>Inc.</u>, 308 F.3d 1304, 1315 (Fed. Cir. 2002).  Such testimony must be corroborated when it comes from an interested party.  <u>Id.</u> at 1316.

### a.   The Miki patent[3]

Altair asserts that Claim 1 of the '054 patent is invalid and anticipated by Japanese Utility Model No. 3031881 (the "Miki patent"), Def.'s SOF, Ex. 21, ECF No. 180-21.  <u>See</u> Def.'s Reply Mem. L. Supp. Def.'s Mot. Summ. J. Invalidity 2, ECF No. 198. Altair presents a claim chart mapping each claim limitation and the prior art it allegedly reads on.  <u>See</u> Def.'s Mem. L. Supp. Mot. Summ. J. Invalidity 8-10, ECF No. 179.  Altair argues that the "Miki [patent] discloses magnetic clip-on eyewear that has all the physical structure recited in the '054 patent, namely: (a) a primary frame with a magnet in its bridge, and (b) an auxiliary 'clip on' frame with a magnet attached to a projection extending from the bridge of the auxiliary frame over the bridge of the primary frame."  Def.'s Reply Mem. L. Supp. Def.'s Mot. Summ. J. Invalidity 2.

As identified by Altair, there are two points of contention between the parties over the Miki patent as it relates to the

_____

[3] Although Altair half-heartedly argues that German Patent No. 3933310 (filed Oct. 5, 1989) (the "Stemme patent"), Def.'s SOF, Ex. 10, ECF No. 180-10, is an anticipatory reference, <u>see</u> Def.'s Mem. L. Opp'n Pls.' Cross Mot. Summ. J. Validity 9 n.5, ECF No. 208, the Court rejects that argument without discussion and discusses the Stemme patent only with respect to the issue of obviousness, <u>see</u> <u>infra</u> at Section II.C.2.a.

'054 patent.  First, Aspex contends that the Miki patent lacks a
magnet embedded within the bridge of the primary frame, as exists
in the '054 patent, while Altair claims that the Miki patent's
specification discloses a magnet "in" the bridge.  Id. at 2-3.
Second, Aspex maintains that Claim 1 of the '054 patent requires
one-hand assembly and that the Miki patent cannot be assembled
with one hand because the Miki patent specifies hooks on the
clip-on lenses, while Altair asserts that if the Miki patent has
all the physical structures of the '054 patent, it is inherently
capable of meeting the '054 patent's claimed uses and functions.
Id. at 3.

### b.   The Miki patent specification

The Miki patent's objective "is to offer clip-on eyeglasses
that are easy to attach and detach, have an attractive
appearance, and achieve a stable fixed state even for heavy clip-
on lenses."  Miki patent 6.  The Miki patent describes:

> Clip-on glasses [that] are comprised of clip-on lenses
> having a U-shaped hook formed in the bridge and hooks for
> stabilizing the position on the top edges of the rim and
> eyeglasses; have magnets installed on the back surface of
> the bridge of the eyeglasses and on the inside of the
> hook formed in the bridge of the clip-on lenses to assist
> in attaching and removing by the U-shaped hook formed in
> the bridge of the clip-on lenses for holding the clip-on
> lenses in a stable state.

Id. at 1.  The clip-on lenses are held in a stable state on the
primary spectacle frame by magnets on the back surface of the
bridge of the primary frame and the inside of the hook in the

13

bridge of the clip-on lenses.  Id. at 2.  To further stablize the position, there are hooks on the clip-on lenses for latching near the brow of the top rim edges of the primary frame.  Id.

Aspex argues that the Miki patent's first magnetic member is not embedded in the primary spectacle frame but rather is attached to the backside of the middle bridge.  Pls.' Mem. P. & A. Supp. Resp. Opp'n Def.'s Mot. Summ. J. Invalidity & Cross Mot. Summ. J. Validity 11, ECF No. 186.  Aspex also questions whether "magnets in the bridge" indicates that the magnets are embedded in the bridge.  Id. at 12.  Aspex argues that Altair has offered no expert testimony corroborating its position that the Miki patent discloses magnets embedded in the primary spectacle bridge.  Id.

### c. Hooks

Altair disagrees with Aspex's argument that because the Miki patent discloses hooks as well as bridge-mounted magnets, it does not anticipate the '054 patent.  Def.'s Mem. L. Supp. Mot. Summ. J. Invalidity 13.  Relying on CIAS Inc. v. Alliance Gaming Corp., 504 F.3d 1356, 1360 (Fed. Cir. 2007), Altair asserts that Claim 1 is an "open" claim, such that prior art that discloses all of the recited elements can anticipate a claim even if that claim discloses additional features as well.  Def.'s Mem. L. Supp. Mot. Summ. J. Invalidity 13.

### d. One-handedness

14

Altair argues that the reference in Claim 1 to attaching the auxiliary and primary frames with only one hand is not a structural limitation.  Id.  Moreover, Altair explains that the Miki patent also can be attached easily with one hand and that Chao expressly represented to the USPTO in his '811 and '896 patents that magnetic clip-on eyewear such as the Miki patent could be attached easily with one hand.  Id. at 13-14 (citing In re Schreiber, 128 F.3d 1473 (Fed. Cir. 1997)).

After analyzing the '811 and '896 patents, this Court is not convinced that Chao represented anywhere in either of these patents that eyewear such as the Miki patent could be attached easily with one hand.  The only mention of hands found in the '811 and '896 patents appears in the specifications, where Chao noted that the frame designs of the prior art required "maneuvering with two hands."  See '811 patent col.1 l.32, Def.'s SOF, Ex. 4, ECF No. 180-4; '896 patent col.1 l.32, Def.'s SOF, Ex. 5, ECF No. 180-5.  Accordingly, this Court considers one-handedness to be neither an explicit nor an inherent limitation in the prior art.  The holding of In re Schreiber, 128 F.3d at 1477, that a finding of anticipation is warranted where a new intended use for an old product is inherent, even if undisclosed, in the prior art, is thus inapposite.  As to this aspect of the case, Altair has not proven by clear and convincing evidence that

the Miki patent is inherently capable of being assembled with
"one hand."[4]

### e.   Expert reports

Altair argues that because the disclosures of the Miki
patent are straightforward, expert commentary is unnecessary.
Def.'s Mem. L. Supp. Mot. Summ. J. Invalidity 10 n.3.   In
contrast, Aspex points out that the Federal Circuit expressly
held that magnetic clip-on eyewear technology is not among the
"rare" technologies that do not require expert testimony to
determine anticipation.   Aspex Eyewear, Inc. v. Concepts in
Optics, Inc., 111 F. App'x 582, 588 (Fed. Cir. 2004).

The report of Joel Sodano, Altair's expert, includes a table
comparing the Miki patent to the '054 patent, see Expert Report
of Joel Sodano Regarding Non-Infringement & Invalidity ("Sodano
Expert Report") 15-16, Def.'s SOF, Ex. 20, ECF No. 180-20, but
Sodano fails to explain in detail how the Miki patent anticipates
the '054 patent.   Instead, Sodano contents himself with repeating

---

[4] At the motion hearing, Altair presented this Court with a
prototype of the Miki patent eyewear as well as one of its own
eyeglasses so that this Court could judge for itself.   Def.'s
Mem. L. Opp'n Pls.' Cross Mot. Summ. J. Validity 5 n.4.   Aspex
contends that Altair's prototypes do not accurately follow the
Miki patent's teachings because the prototype hooks are
elongated, creating more space between both rims, and because one
prototype attaches the magnets and the other embeds them, whereas
the Miki patent only teaches magnets "attached to," not embedded
in.   Pls.' Reply Mem. P. & A. Supp. Cross Mot. Summ. J. Validity
14-15, ECF No. 216.   Neither my own facility for "one-handedness"
nor my fooling around with these eyeglasses plays any role in
this case.

the Claim 1 limitations word by word in the Miki patent column.
Id. Sodano also concludes simpliciter that because the Miki
patent states that the attachment and detachment of the lenses is
simple, a person skilled in the art would interpret this to mean
that the clip-on lenses could be attached with one hand.  Id.

During his deposition, which took place before the claim was
finally construed by this Court, Sodano was asked to assume that
"secured in" is defined as "embedded in" and "secured to" as
"attached to."  Dep. of Joel Sodano ("Sodano Dep. I") 80:7-10,
Def.'s Resp. Pls.' Controverting & Supplemental Statement Facts
Supp. Reply Mot. Summ. J. Literal Infringement & Resp. Def.'s
Cross Mot. Summ. J. Non-Infringement, Ex. 1, ECF No. 215-1.
Given these definitions, Sodano was asked whether the Miki patent
would satisfy Claim 1's element of "[a] first magnetic member
secured in said middle bridge portion of said primary frame."
Id. at 80:3-5.  Sodano answered that the Miki patent would not
then satisfy this claim element because the magnetic members are
attached to the middle bridge portion and not embedded in it.
Id. at 80:7-13, 85:7-19, 96:13-16.

Lee Zaro, Aspex's expert, also includes in his report a
table comparing the Miki patent to the '054 patent.  Decl. Lee
Zaro Supp. Pls.'s Resp. Opp'n Def.'s Mot. Summ. J. & Cross Mot.
Summ. J. Validity ("Zaro Decl.") 14-16, ECF No. 188.  In making
the comparison, Zaro notes that the Miki patent's first magnet is

17

not embedded in but mounted to the back of the middle bridge
portion of the primary frame. Id. at 14. Next, he observes that
the Miki patent's stability is attributable only to the three
sets of hooks on the clip-on lenses; there is no suggestion that
the magnets provide stability in the absence of the hooks. Id.
at 15. Finally, Zaro claims that the hooks would make it
cumbersome for a user to attach the clip-on lenses to the primary
frame with only one hand while the user is wearing the primary
frame. Id.

Upon review of the entire record, this Court agrees with
Aspex that the Miki patent fails to disclose to one skilled in
the art all of the elements of Claim 1 of the '054 patent.
Altair thus has failed to prove by clear and convincing evidence
that the Miki patent anticipates the '054 patent.

### 2.   Obviousness

"A claimed invention is unpatentable if the differences
between it and the prior art are such that the subject matter as
a whole would have been obvious at the time the invention was
made to a person having ordinary skill in the pertinent art."
Tokai Corp. v. Easton Enters. Inc., 632 F.3d 1358, 1366 (Fed.
Cir. 2011). While the ultimate ruling on this issue is matter of
law, that ruling necessarily depends on factual findings. The
underlying factual inquiry in an obviousness analysis includes
four factors: first, the scope and content of the prior art;

18

second, the differences between the prior art and the claims at issue; third, the level of ordinary skill in the pertinent art; and, fourth, secondary indicia of nonobviousness such as commercial success, the failure of others, and copying.  <u>Graham</u> v. <u>John Deere Co.</u>, 383 U.S. 1, 17 (1966).

This is hardly a rigid framework.  In <u>KSR Int'l Co.</u> v. <u>Teleflex, Inc.</u>, 550 U.S. 398 (2007), the Supreme Court instructed the lower courts to take a flexible approach to determining when an invention is obvious, emphasizing the role of common sense when analyzing whether a patent was obvious at the time it was created.  <u>Id.</u> at 421-22.[5]  An invention has to represent more than the "predictable use of prior art elements according to their established functions."  <u>Id.</u> at 417.  While an invention

_____

[5] There would appear to be a concerted effort on the part of certain academics to further the use of special questions where a jury considers the obviousness issue.  <u>See</u> John Guo, <u>Special Verdicts: An Obvious Trial Procedure for Deciding Obviousness in Patent Litigation</u>, 40 Sw. L. Rev. 513 (2011); Rishi S. Suthar, <u>What Jury? A New Approach to Obviousness After </u>KSR v. Teleflex, 18 J. Intell. Prop. L. 295 (2010); Wesley A. Demory, Note, <u>Patent Claim Obviousness in Jury Trials: Where's the Analysis?</u>, 6 J. Bus. & Tech. L. 449 (2011).  Special questions, it is argued, would prevent district judges from simply rubber stamping the jury's conclusion on the ultimate issue.  The Federal Circuit wisely has avoided any such instruction.  To cabin the jury's analysis in such a fashion would fly in the face of the flexible approach mandated by <u>KSR</u> and would add needless complexity to litigation that is already far too slow and convoluted.  These theoreticians ignore the fact that district judges are very familiar with legal analysis involving drawing a legal conclusion from underlying facts.  This is what they do frequently whenever evaluating the reasonableness of a seizure under the Fourth Amendment.  <u>See</u> <u>Scott</u> v. <u>Harris</u>, 550 U.S. 372, 383 (2007).

"composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art . . . . it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." Id. at 418. The Supreme Court stated that:

> When there is a design need or market pressure to solve a problem and there a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

Id. at 421.

Altair asserts that Claim 1 is obvious in view of the prior Stemme, Miki, Chao '207, Chen, Zen, Sadanaga, Nishioka, and Martin patents. See Def.'s Reply Mem. L. Supp. Mot. Summ. J. Invalidity 11-15. Because Altair's contention rests entirely on earlier patents, there is no real dispute over the scope and content of the prior art. Likewise, given the subject matter of the patent at issue, the Court readily can ascertain the level of ordinary skill in the prior art. The parties themselves generally agree on the relevant skill level. Aspex defines it as "three to six years of background in the product design and development of eyewear, and specifically clip-on eyewear." Zaro Decl. 2. Altair defines it as "five or more years working in product design and development in the field of eyewear, including

20

clip-on eyewear." Sodano Expert Report 3-4. These experience distinctions make no difference here.

The Court also need not dwell on the fourth <u>Graham</u> factor, or the secondary indicia of nonobviousness. Zaro characterizes the company's sale of over $110,000,000 worth of EasyClip and Tak2mi bridge-mounted products between October 2000 and September 2009 as evidence of commercial success. Rebuttal Expert Report of Lee Zaro Regarding Infringement & Validity ("Zaro Rebuttal Expert Report") 55, Def.'s SOF, Ex. 23, ECF No. 180-23. Yet, the burden is on the patentee to establish a nexus between the evidence of commercial success and the patented invention, <u>see In re Huang</u>, 100 F.3d 135, 140 (Fed. Cir. 1996), and Aspex has failed to show that its sales were a direct result of the unique characteristics of the '054 patent. Aspex also fails to establish as objective evidence of nonobviousness that competitors copied the '054 patent. Copying may be demonstrated by internal company documents, the disassembly of a patented prototype, or access to a patented product. <u>Iron Grip Barbell Co.</u> v. <u>USA Sports, Inc.</u>, 392 F.3d 1317, 1325 (Fed. Cir. 2004). Other than Zaro's unsupported opinion, <u>see</u> Zaro Rebuttal Expert Report 56, there is no evidence in the record that Altair made efforts to replicate Claim 1 of the '054 patent. Finally, Zaro's argument that "[t]he failure of the prior art to solve the problems solved by the invention of Claim 1 of the '054 patent

21

supports [his] opinion that the Claim 1 would not have been
obvious to a person of ordinary skill in the art during the 1996
timeframe when the invention was made," id. at 54, is weak and
conclusory.

The major dispute, and the Court's proper focus therefore,
concerns the second Graham factor: the differences, if any,
between the prior art and Claim 1 of the '054 patent.  The
Court's review of the other proffered items of prior art yields
the following summaries of each patent and conclusion as to how
they differ from Claim 1:

### a.   The Stemme patent

German Patent No. 39 33 310 (filed Oct. 5, 1989) (the
"Stemme patent"), Def.'s SOF, Ex. 10, ECF No. 180-10, describes a
fastening arrangement for attaching an accessory to at least one
eye aid, especially eyeglasses.  Stemme patent 1.  The Stemme
patent's specification describes a preferred embodiment of the
invention as including two magnets, one permanent magnet being
held fixedly in the bridge of the primary frame and another
permanent magnet held fixedly in the intermediate part which
carries the two lenses of the auxiliary frame.  Id. at 5.

### b.   The Chao '207 patent

The Chao '207 patent describes primary and auxiliary
spectacle frames for supporting lenses.  Chao '207 patent 1,
Decl. Kimberly Warshawsky Supp. Pls.' Local Rule 56.1

Controverting & Supplemental Statement Facts Supp. Pls.' Resp.
Def.'s Mot. Summ. J. & Cross Mot. Summ. J. Validity ("Warshawsky
Decl."), Ex. 16, ECF No. 192-5.  The primary spectacle frame
includes two legs pivotally coupled to two side extensions and
includes two magnetic members secured in the rear and side
portions.  Id. at col.1 1:46-54, col.2 1:36-42.  The auxiliary
spectacle frame includes two legs engaged on the primary
spectacle frame, each having a magnetic member for engaging with
the magnetic members of the primary spectacle frame.  Id. at
col.1 1:54-62, col.2 1:42-49.  The Chao '207 patent's
specification states that the magnets are not embedded in the
frames so that the strength of the frames will not be decreased.
Id. at col. 2 1:64-67.

### c.    The Chen patent

Chinese Patent Disclosure 107096 (filed Sept. 16, 1976) (the
"Chen patent") describes two pairs of eyeglasses that can be worn
at the same time.  Chen patent 2, Def.'s SOF, Ex. 11, ECF No.
180-11.  The frame of the primary eyeglass is made of flexible
magnetic material or flexible magnetic material is embedded in
the frame.  Id.  Permanent magnetic material is embedded in the
frame of the secondary eyeglass or on the lenses of the secondary
eyeglass.  Id.

### d.    The Zen patent

23

German Patent No. 88 06 898 (filed May 26, 1988) (the "Zen patent") describes a primary frame with pieces of soft, magnetic material fastened to its front side and an auxiliary frame with permanently magnetic material fastened to its back side.   Zen patent 1, Def.'s SOF, Ex. 12, ECF No. 180-12.   When the auxiliary frame is placed over the front of the primary frame, the permanent magnetic material and the soft, magnetic material come into contact with each other.   Id.   The Zen patent's specification also describes, as an embodiment of the invention, both the primary and auxiliary frames having bridges that intertwine when in contact by way of a backward-pointing protrusion on the bridge of the auxiliary frame inserting into into a recess in the bridge of the primary frame.   Id. at 7-9.

### e.   The Sadanaga patent

Japanese Utility Model No. H05-40493 (filed 17, 1989) (the "Sadanaga patent") teaches magnetic members on projections both attached to the primary and auxiliary spectacle frames.   Sadanaga patent 1, Warshawsky Decl., Ex. 23, ECF No. 192-8.

### f.   The Nishioka patent

United States Patent No. 5,642,177 (filed Dec. 9, 1994) (the "Nishioka patent") teaches auxiliary spectacle frames with magnet members.   Nishioka patent col.1 1:7-9, Def.'s SOF, Ex. 13, ECF No. 180-13.

### g.   The Martin patent

24

United States Patent No. 5,867,244 (filed Aug. 3, 1995) (the
"Martin patent") teaches an auxiliary spectacle frame and primary
spectacle frame attached by a projection at the middle bridge
portion.  Martin patent col.2 1.4-8, Warshawsky Decl., Ex. 25,
No. 192-8.

> h.   **Differences between the prior art and Claim 1
> of the '054 patent**

The main difference between the Chao '207, Chen, and Zen
patents when compared with Claim 1 of the '054 patent is that
none of these references describes a magnet either attached to or
embedded in the middle bridge of the primary frame.  The Chao
'207 patent's magnets are at the end of each side of the
auxiliary frame; the Chen patent includes a series of magnets on
the rims of the frames; the Zen patent, in one embodiment,
discloses a non-magnetic projection.  Moreover, none of this
prior art teaches the "one hand" limitation of the '054 patent.
The arrangements in the Sadanaga, Nishioka, and Martin references
are even more dissimilar.  None of these references, whether
alone or in combination, renders Claim 1 of the '054 patent
obvious.

The Miki patent comes closer but is nonetheless distinct
from the '054 patent.  The Miki patent includes a total of three
hooks on the clip-on lenses that attach to the primary spectacle
frame, whereas the '054 patent specifies a singular projection
that extends over from the auxiliary frame to engage with the

middle bridge of the primary frame.  Furthermore, the Miki patent's magnet, which is only an accessory stabilizing support, is attached to the backside of the middle bridge of the primary frame, rather than embedded in the primary frame as this Court construes the '054 patent's specification term "secured to" to include.  Finally, the Miki patent does not teach the "one hand" limitation of the '054 patent.

Altair's position is that the Stemme patent by itself invalidates Claim 1 of the '054 patent on grounds of obviousness because it includes two embedded magnets, one in the primary frame's bridge and the other in a projection from its bridge. Altair suggests that if the only difference between the Stemme patent and Claim 1 is a projection, such projections were already well known in the art because of the Miki patent.  Def.'s Mem. L. Opp'n Pls.' Cross Mot. Summ. J. Validity 10.  Aspex, in response, differentiates Claim 1 of the '054 patent from the Stemme patent only by pointing out that the Stemme patent's projection does not extend over the top of the middle bridge of the primary frame and that the Stemme patent does not include the "one hand" limitation.  Pls.' Mem. P. & A. Supp. Resp. Opp'n Def.'s Mot. Summ. J. Invalidity & Cross Mot. Summ. J. Validity 14.

Against the background of the Stemme and Miki patents considered together, this Court concludes as matter of common sense that Claim 1 of '054 patent is obvious.  The optimal

placement of the magnets is a matter easily derived from the
prior art, and embedding them in the frame is such an obvious
cosmetic design improvement as to hardly require discussion.
"One-handedness" may be a valid claim limitation, but it too is
an obvious characteristic desirable (and easily obtained by
magnets) in attachable eyewear.

The Court recognizes that in the arcane world of patent
litigation it is not competent to render such an opinion absent
supporting "expert" opinion.  Aspex Eyewear, 111 F. App'x at 588.
In Proveris Scientific Corp. v. Innovasystems, Inc., 536 F.3d
1256, 1267 (Fed. Cir. 2008), the Federal Circuit held that expert
testimony is required to establish invalidity on grounds of
anticipation and obviousness where the subject matter is
sufficiently complex.  To this end, Altair proffers the opinion
of its expert, Sodano.

Sodano's report first explains how Claim 1 of the '054
patent is rendered obvious by the Miki patent in view of the
teachings of the Chao '207 patent.  Sodano Expert Report 18-20.
Using a table to show that each limitation of Claim 1 can be
found by combining these two prior art patents, Sodano repeats
these same limitations in both the "Claim 1" and "Prior Art"
columns of the table without much explanation.  Id.  He reaches
the following conclusion as to why combining the Miki and Chao
'207 patents would make it obvious for a person of ordinary skill

27

to place the magnet in the middle bridge portion of the primary
frame:

> A person of ordinary skill in the art would be clearly
> informed by Chao '207 to place the magnet "in" or "to"
> the bridge portion dependant on structural concerns, as
> expressly taught by Chao '207, a reference which is
> directed to clearly analogous art, i.e., the use of
> magnets to attach auxiliary frames to primary frames.

Id. at 19.  Sodano explains that because the Chao '207 patent
expressly states the distinction between attaching magnets to the
spectacle frame and embedding magnets in the arms and because the
Miki patent's magnet is attached to the primary bridge, a person
of ordinary skill in the art would be taught to place the magnet
in the bridge portion.   Id.  Sodano also explains that because
the Miki patent teaches placement of the magnets in the bridge
area and because the Chao '207 patent teaches attachment with
magnets but without clips, combining them would be obvious to a
person of ordinary skill in the art.  Dep. of Joel Sodano
("Sodano Dep. II") 187:18 to 189:25, Def.'S Reply Mem. L. Supp.
Def.'s Mot. Summ. J. Invalidity, Ex. 1, ECF 198-1.  Sodano
further explains that if the Chao '207 patent's hooking mechanism
were to be incorporated into the Miki patent's bridge, it would
eliminate the need for the hooks in the Miki patent and would
result in a design that is essentially Claim 1 of the '054
patent.  Id. at 190:9-20, 192:15-24.

   Sodano also states in his expert report that Claim 1 is
rendered obvious by the Chen patent in view of the teachings of

the Chao '207 patent.  Sodano Expert Report 20.  Again using a
table, Sodano merely lists each limitation of Claim 1 and fills
the Chen patent's side of the table with the exact same words as
Claim 1.  Id. at 20-22.  Sodano only includes two explanations
concerning the Chen patent that are of use to this Court.  First,
in articulating how the magnets of the bridge portion of the
auxiliary frame could be moved to the projection itself, Sodano
states:

> Chao '207 discloses the positioning of the magnet on a
> projection, as well as explicitly discusses the design
> decisions as to whether it should be attached in or to
> the projection.  Thus, a person skilled in the art would
> know that the magnets could be readily moved from the
> bridge portion of the auxiliary spectacle frame to the
> projection itself, and thus such relocation was nothing
> more than a simple design choice.

Id. at 21-22.  Second, Sodano states:

> Chen discloses identical structure to claim 1 of the '054
> patent, with just the relocation of the magnets from on
> the projection to on the rear face of the auxiliary
> spectacles . . . . A person skilled in the art, would
> likely try moving the magnet member locations to the top
> bridge of the primary spectacle frame and the projection
> of the auxiliary spectacle frame . . . .

Id. at 22.

Sodano next concludes that Claim 1 is rendered obvious by
the Zen patent in view of the Chao '207, Mike, and Stemme
patents:

> Zen discloses an eyeglass structure nearly identical to
> Chen, . . . however, the magnets shown are located on the
> frame of the glasses, not the bridge and projection.
> Again, the motivation to simply move the magnets to the
> projection and bridge are clearly established in Stemme,

29

Miki, and Chao '207, and thus claim 1 is also obvious in view over Zen in view of Chao '207, Miki, or Stemme.

Id. at 22.

Lastly, Sodano disposes of the obviousness analysis with respect to the Sadanaga, Nishioka, and Martin patents in one short and conclusory paragraph:

> Other prior art references also teach the elements of claim 1 of the '054 patent.  Sadanaga teaches magnetic members on projections both attached to the primary and auxiliary spectacle frames.  Nishioka teaches auxiliary spectacle frames attached to primary spectacle frames with magnet members.  Martin teaches an auxiliary spectacle frame and a primary spectacle frame attached by a projection at the middle bridge portion.  It is my opinion, that it would also be obvious for one skilled in the art to combine these teachings to arrive at what is claimed in the '054 patent thus providing additional invalidity arguments.

Id. at 23.  Soldano's mere recitation of this prior art is utterly unhelpful to a fact-finder since there really is no substantial explanation as to how the Sadanaga, Nishioka and Martin patents render Claim 1 of the '054 patent obvious.

One would think that the Court's own conclusions, bolstered by an expert report, would lead to an inevitable finding of obviousness.  Such is not the case here, however, as there is a serious question whether Soldano's report meets the existing standards for expert testimony established in Koito Manufacturing Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1152 (Fed Cir. 2004)

(Gajarsa, J.).[6]  Certainly his purported analysis of the Sadanaga, Nishioka, and Martin patents does not, and the Court ignores it.

Sodano's comparisons of the Miki and Stemme patents with Claim 1 of the '054 patent are ambiguous on the actual scope of both of these patents.  Sodano's charts simply repeat Claim 1 when describing both the Miki and Stemme patents, making it very difficult for this Court to understand the limitations of the prior art in comparison to Claim 1.

Although Sodano did specify the prior art references upon which he relied, he neglected to discuss how these references differed from the disputed claim limitations or explain how the combination of these references would have rendered Claim 1 obvious to a person of ordinary skill in the art.  "[M]ere identification in the prior art of each element is insufficient to defeat the patentability of the combined subject matter as a whole."  In re Kahn, 441 F.3d 977, 986 (Fed. Cir. 2006). Sodano's expert report is sparse in detail, failing to show how combining the references would make Claim 1 obvious.

---

[6] This Court takes its "gatekeeper" role very seriously: as Altair bears the burden of proof on the issue of invalidity, if its expert's reports and deposition do not meet the Federal Circuit standards that Koito imposed, they must be ignored and its claim of invalidity based on obviousness must fail.  See Rothschild v. Cree, Inc., 711 F. Supp. 2d 173, 194-95 (D. Mass. 2010); Ambit Corp. v. Delta Airlines, Inc., 707 F. Supp. 2d 74, 76-78 (D. Mass. 2010); NewRiver, Inc. v. Newkirk Prods., Inc., 674 F. Supp. 2d 320, 325, 333-36 (D. Mass. 2009).

Sodano's deposition, although more thorough than his expert report, lacks an adequate explanation as to why this Court should consider Claim 1 obvious because of the prior art.  In his deposition, Sodano explained in more detail why combining the Miki and Chao '207 patents would render Claim 1 obvious. Sodano's theory that moving the Chao '207 patent's clip to the Miki patent's bridge would render the '054 patent obvious has the benefit of common sense logic, but it is no better than this Courts own a priori reasoning.  It is - let's face it - sophistry for this Court to defend this leap on the basis of an "expert" report that has no more than this conclusory statement.

Even so, despite its serious misgivings, the Court credits the internal logic of the Sodano report, finding that it bolsters the Court's own analysis.  Accordingly, the Court rules that Claim 1 of the '054 patent is obvious in light of the teachings of the Stemme, Miki, Chao '207, Chen, and Zen patents, when taken in combination and considerating the motivation to make common sense design and cosmetic improvements.

### B.   Literal Infringement

Because each claim is a separate statement of the patented invention, a patent is infringed if any one of its claims is infringed.  Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1220 (Fed. Cir. 1995).  A device is not saved from infringement by adding elements beyond those claimed in a patent; if a claim

reads on part of an accused device, then the entire accused device infringes the claim.  Suntiger, Inc. v. Scientific Research Funding Grp., 189 F.3d 1327, 1336 (Fed. Cir. 1999). Conversely, if an accused device or process does not include each and every limitation of a patent claim, there is no literal infringement.  Spectrum Int'l, Inc. v. Sterilite Corp., 164 F.3d 1372, 1380 (Fed. Cir. 1998).

Claim 1 of the '054 patent recites:

**1.  An eyeglass device** . . .

'054 patent col.2 1:64.  There is no dispute that Altair's accused Sunlites, Diamonite, and Joseph Abboud are eyeglass devices.

> **A primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including a middle bridge portion** . . .

Id. at col.2 1:65-67.  There is no dispute as to this limitation.

> **A first magnetic member secured in said middle bridge portion of said primary spectacle frame** . . .

Id. at col.3 1:1-2.  There is also no dispute by the parties that Altair's accused eyewear literally satisfies this element.

> **An auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary spectacle frame including a middle bridge portion having a projection extended therefrom for extending over and for engaging with said middle bridge portion of said primary spectacle frame** . . .

Id. at col.3 1:3-8.  Sodano did not explicitly analyze this claim element in his expert report, but Zaro's declaration is more than

33

sufficient to satisfy the Court that this element is literally
infringed.  Pls.' Opening Mem. P. & A. Supp. Mot. Summ. J.
Literal Infringement 16.  Additionally, Altair accepted that
"[t]here is no question that the auxiliary frames of Altair's
accused eyewear products have a magnet embedded within at least
one projection extending from the bridge."  Def.'s Mem. L. Opp'n
Pls.' Mot. Summ. J. Infringement & Supp. Def.'s Cross Mot. Summ.
J. Non-Infringement 9.  Altair's concession satisfies this claim
element.

> **A second magnetic member secured to said projection of
> said auxiliary spectacle frame for engaging with
> said first magnetic member of said primary
> spectacle frame and for allowing said auxiliary
> spectacle frame to be attached to said primary
> spectacle frame with only one hand by a user.**

'054 patent col.3 1:9-14.  This is the most important part of
Claim 1; the Court's construction of "secured to" is fundamental
to the literal infringement analysis.  Since this Court has
construed "secured to" as "embedded within and attached to," it
also finds that Altair's products satisfy this limitation of
Claim 1.

Altair finally contends that there is no infringement
because there is no evidence that the accused devices can be
attached with one hand.  Def.'s Mem. L. Opp'n Pls.' Mot. Summ. J.
Infringement & Supp. Def.'s Cross Mot. Summ. J. Non-Infringement
2.  Aspex asserts that Altair is not being candid with the Court,

claiming that Altair has knowledge that their devices can be attached with one hand.  Pls.' Reply Mem. Supp. Mot. Summ. J. Literal Infringement & Resp. Def.'s Cross Mot. Summ. J. Non-Infringement 2, ECF No. 193.  Zaro's position is that the "one hand" limitation is significant to Claim 1 of the '054 patent, Zaro Rebuttal Expert Report 12, but he states that he has tested each of Altair's accused products to determine whether the auxiliary frame could be attached easily to the primary frame with only one hand while the primary frame is being worn and found that they are all easily attachable with one hand.  Id. at 16.[7]

## II. Conclusion

For the reasons discussed above, this Court, in its Order dated September 30, 2011, ECF No. 226, ruled that:

(1) The meaning of "secured to" is "embedded within and attached to."

(2) Claim 1 of the '054 patent is invalid as obvious.

(3) Altair's accused devices literally infringe Claim 1 of the '054 patent.

---

[7] During the Markman hearing, Altair's counsel stated that if its "products can be assembled with one hand, so can all of that prior art."  Tr. Markman Hr'g & Case Stated 48.  Not so. All the prior art, including the Miki patent, had different ways of stabilizing the auxiliary frame to the primary frame, including clips and hooks.  After analyzing the prior art, this Court finds that not even the Miki patent prototype Altair provided is easily attached with one hand.

Accordingly, as to the issue of validity, Altair's Motion for Summary Judgment of Invalidity, ECF No. 178, was ALLOWED, while Aspex's Cross Motion for Summary Judgment of Validity, ECF No. 185, was DENIED.  As to the issue of infringement, Aspex's Motion for Summary Judgment of Literal Infringement, ECF No. 171, was ALLOWED, while Altair's Cross Motion for Non-Infringement, ECF No. 190, was DENIED.  Because this Court ruled that Claim 1 of the '054 patent is invalid as obvious, judgment entered for Altair.[8]

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

------

[8] In most cases the trial judge, with the "satisfaction that proceeds from the consciousness of duty faithfully performed," General Robert E. Lee, Farewell Address to Army of Northern Virginia (Apr. 10, 1865), and a reversal rate among the several circuits ranging from two to fourteen percent, has the added satisfaction of knowing that he has probably resolved the parties' dispute and that they can get on with their business. Not so here.

Here the parties have fought each other to a standstill and any "victory" is phyrric.  Given the monetary stakes involved and a Federal Circuit reversal rate exceeding forty percent, this Court is no more than a way station - an intermediate irritating event - preliminary to the main bout in the Federal Circuit. Whatever the merits of such a system, it is undeniably slow and extraordinarily expensive.  The most this Court can say is, "Good luck and Godspeed."